HOWELLS ELEVATOR, INC., APPELLEE, V. STANCO FARM SUPPLY
CO., INC., APPELLANT.
455 N.W.2d 777

Filed May 25, 1990.   No. 88-439.

Donald D. Schneider, of Simmons & Schneider, P.C., for appellant.

H.E. Hurt, Jr., of Hurt & Gallant, for appellee.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ.

Caporale, J.

Following a bench trial, plaintiff-appellee, Howells Elevator, Inc., obtained a judgment for damages allegedly caused by the negligence of defendant-appellant, Stanco Farm Supply Co., Inc. Stanco Farm Supply assigns as error, among other things, the district court's findings (1) that Stanco Farm Supply is liable to Howells Elevator and (2) that Howells Elevator proved damages. As the record sustains those assignments of error, we reverse and remand with the direction that the cause be dismissed.

Howells Elevator operates grain elevator and storage

facilities in Howells, Nebraska, and near Dodge, Nebraska, while Stanco Farm Supply hauls grain as part of its business operation. The occurrence which precipitated this action took place on October 13, 1986, in Howells Elevator's 240- by 450-foot grain storage facility near Dodge, when the rear wheels of Stanco Farm Supply's semitrailer truck ran over and damaged one of Howells Elevator's "under-truck" grain conveyors.

An understanding of the case requires a description of the method Howells Elevator then used to unload corn as it arrived at its location near Dodge. Trucks were maneuvered into such a position that a Howells Elevator employee could use a "Bobcat" to place an under-truck grain conveyor under the trailer portion of trucks loaded with corn. The corn was then emptied onto the under-truck conveyor from trapdoors located at the bottom of the hoppers on the floor of the trailer. The under-truck conveyor then moved the corn to another, larger conveyor, which in turn moved the corn to its place of storage.

The operation required that the truck be correctly positioned to facilitate movement of the corn from the under-truck conveyor to the larger conveyor, and such positioning allowed a tolerance of about 2 feet to the north and south and 3 to 4 feet to the east and west. When positioning a truck for unloading, one of Howells Elevator's employees would direct the driver while another of its employees would move the under-truck conveyor under the truck to determine whether the truck was in the proper position for unloading. While positioning a truck required a coordinated effort among the three workmen, the Howells Elevator employee directing the truckdriver did not direct the Bobcat operator; the Bobcat operator simply reacted to the instructions given to the truckdriver and to said driver's actions.

On the date of the occurrence, Howells Elevator's employee David Bartosh was guiding trucks into position to be unloaded, Randall Miller was operating Stanco Farm Supply's corn-filled truck, and Paul Uher, another of Howells Elevator's employees, was operating the Bobcat used to move an under-truck conveyor into position under the hopper of Stanco Farm Supply's truck. In accordance with Howells Elevator's

system, Miller maneuvered Stanco Farm Supply's truck so that it was facing west inside the grain storage building. Because the truck was not properly positioned for unloading, Bartosh directed Miller to reposition it.

The record indicates that Miller, with Bartosh's guidance, made at least three attempts to place Stanco Farm Supply's truck in a proper position for unloading. Bartosh testified that after the second attempt, Miller "got really angry" and "started driving recklessly." Bartosh further testified he determined that Miller was angry "[b]y the way he dumped the clutch out; the truck's smoke would come out, the exhaust; he was driving too fast," and testified that the cab of the truck would "twist from dumping the clutch fast." Uher corroborated what Bartosh had stated, testifying that Miller "was getting angry and reckless" and that Miller was "jerking the clutch and speeding ahead fast, smoke coming out of the exhaust from the accelerator." Contrary to the testimony of Bartosh and Uher, Miller testified that he neither became angry nor drove recklessly. When asked about exhaust coming from Stanco Farm Supply's truck, Miller stated: "It's a diesel; it smokes."

After at least three attempts to position the truck for unloading, it was still not in its proper position. Bartosh then instructed Miller to move the truck forward but did not tell him how far to move forward and did not explain the tolerance or margin within which Miller was required to position his truck. Miller followed Bartosh's command, but after Miller had moved the truck forward about 5 feet, its rear wheels ran over the under-truck conveyor. Bartosh testified that "we tried pulling the conveyer out with the bobcat, but the truck was moving too fast. The truck was moving west and the conveyer was being moved west. The truck caught up with the conveyer and ran over the — on top of the conveyer." Bartosh testified that he yelled " 'hold it' " the instant before the truck wheels hit the conveyor, but Miller "was on it, over it and probably five to ten feet past it before he even got stopped."

Howells Elevator's petition alleged that the damage to its grain conveyor was caused by Stanco Farm Supply's negligent failure to (1) keep a reasonable and proper lookout, (2) keep the truck under reasonable control, (3) operate the truck at a

reasonable and prudent speed, and (4) stop before hitting the conveyor. Stanco Farm Supply's answer denied any negligence on its part and affirmatively alleged that the negligence of Howells Elevator's own employees barred any recovery by Howells Elevator. Stanco Farm Supply further alleged that Howells Elevator was negligent in (1) assuming responsibility for directing Stanco Farm Supply's driver and then failing to exercise due care in the course of doing so, (2) directing the driver to move the truck forward "when such forward movement could not be made safely without endangering the conveyor," (3) failing to warn the driver of the danger of striking or driving over the conveyor, and (4) failing to move the conveyor out of the path of the truck before instructing the driver to move the truck forward.

Stanco Farm Supply's first relevant assignment of error alleges that the district court erred in determining that it was liable for the damages to the grain conveyor in that such damages were the result of Howells Elevator's own actions. In considering this contention, we first note that in a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *Heese Produce Co. v. Lueders*, 233 Neb. 12, 443 N.W.2d 278 (1989); *Oddo v. Speedway Scaffold Co.*, 233 Neb. 1, 443 N.W.2d 596 (1989). However, a judgment clearly against the weight of the evidence must be set aside. *McKenzie v. Ladd Trucking Co.*, 214 Neb. 209, 333 N.W.2d 402 (1983). Further, in reviewing a judgment awarded in a bench trial of a law action, the Supreme Court does not reweigh evidence but considers the evidence in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Oddo v. Speedway Scaffold Co., supra*; *Zeller v. County of Howard*, 227 Neb. 667, 419 N.W.2d 654 (1988). However, an appellate court has an obligation to reach an independent conclusion on questions of law. *Dammann v. Litty*, 234 Neb. 664, 452 N.W.2d 522 (1990); *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988).

We next note that in the face of the defense of contributory negligence and to recover on its claim against Stanco Farm

Supply, Howells Elevator must prove Stanco Farm Supply's negligence and must be free from negligence more than slight in comparison with Stanco Farm Supply's negligence. See, Neb. Rev. Stat. § 25-21,185 (Reissue 1989); *Lynn v. Metropolitan Utilities Dist.*, 225 Neb. 121, 403 N.W.2d 335 (1987). An actor is contributorily negligent if (1) he or she fails to protect himself or herself from injury, (2) his or her conduct concurs and cooperates with the defendant's actionable negligence, and (3) his or her conduct contributes to his or her injuries as a proximate cause. *Cassio v. Creighton University*, 233 Neb. 160, 446 N.W.2d 704 (1989).

In light of the foregoing precepts, it becomes clear that Howells Elevator in this case committed such negligence as to bar it from recovery. It is undisputed that Howells Elevator's employee Bartosh was responsible for guiding trucks into their proper position and that its employee Uher was responsible for operating the Bobcat which moved its conveyor in and out from under the trucks being unloaded. In addition, Bartosh testified that as far as he knew, Miller had not previously unloaded grain at Howells Elevator's facility near Dodge. Miller later confirmed that such was the case.

In guiding Stanco Farm Supply's truck into position, Bartosh instructed Miller to pull ahead, this despite the fact that Howells Elevator's under-truck conveyor remained in the path of Stanco Farm Supply's truck. Miller then complied with Bartosh's command, and when he did so, the rear wheels of Stanco Farm Supply's truck moved forward 5 feet and struck Howells Elevator's conveyor. The finding compelled by these circumstances is that Bartosh was negligent in commanding Miller to move forward while Howells Elevator's conveyor remained in the path of Stanco Farm Supply's truck or in failing to tell Miller when he was to stop, or that Uher was negligent in waiting too long to move the conveyor. Whichever was the case, such negligence must be attributed to Howells Elevator, is as a matter of law of a degree more than slight relative to any negligence which may have existed on the part of Stanco Farm Supply, and constitutes a proximate contributing cause of the occurrence which damaged the conveyor. Thus, the district court's conclusion that Stanco Farm Supply is liable to Howells

Elevator is clearly wrong.

Howells Elevator's action would fail even if the foregoing were not true, for Howells Elevator, as claimed by Stanco Farm Supply in its second relevant assignment of error, failed to prove damages.

In attempting to prove the amount of the damages which it incurred as a result of the occurrence, Howells Elevator offered into evidence a written estimate of the cost to repair the damaged conveyor; the district court properly sustained Stanco Farm Supply's objection to this document on hearsay grounds. Howells Elevator's vice president, John Mark Wisnieski, then testified that the conveyor was worth $10,000 immediately before the occurrence and that it had a salvage value of only $400 immediately after the occurrence. Howells Elevator presented no evidence that the damaged grain conveyor was not repairable, presented no admissible evidence of the reasonable cost of repairing the grain conveyor, and did not seek compensation for loss of use of the grain conveyor.

At the conclusion of Howells Elevator's case in chief, Stanco Farm Supply moved for dismissal on the ground that Howells Elevator had failed to prove the damages it allegedly incurred as a result of the subject occurrence; the district court improvidently overruled this motion.

> Where the damage to personal property is such that it cannot be repaired and the property thereby restored to substantially its condition immediately before the damage occurred, or when the reasonable cost of repair exceeds the difference in market value of the property immediately before and immediately after the injury, the measure of damages is the lost market value plus the reasonable value of the loss of use of the property for the reasonable amount of time required to obtain a suitable replacement.

*Chlopek v. Schmall*, 224 Neb. 78, 89, 396 N.W.2d 103, 110 (1986).

Furthermore, in *"L" Investments, Ltd. v. Lynch*, 212 Neb. 319, 328-29, 322 N.W.2d 651, 656-57 (1982), this court stated:

> If, in fact, the cost of repair or restoration exceeds the market value of the property just before the injury, then the proper measure of damages is the market value of the

property just before the damages were incurred, less any salvage.

The burden of establishing the cost of repair shall be upon the party seeking recovery. If the party against whom recovery is sought believes that the cost of repair exceeds the market value of the property just before damage, then the burden shall be upon such party to introduce evidence to establish that fact, and it will then be up to the trier of fact to determine which of the two measures of damages should be employed. Absent evidence that the cost of repair or restoration exceeds the market value of the property just before damage, it will be presumed that the cost of repair or restoration does not exceed the market value of the property just before damage.

While *"L" Investments* involved damage to real property, the language set forth therein is equally applicable to cases involving damage to personal property.

Thus, in order to recover the difference in market value of personal property immediately before and immediately after the injury, a plaintiff must prove (1) that the damage to the property is such that it cannot be repaired and thereby restored to substantially its condition immediately before the damage occurred or that the reasonable cost of repair exceeds the difference in market value of the property immediately before and immediately after the injury, (2) the reasonable market value of the property immediately before the accident, and (3) the reasonable market value of the property immediately after the accident. See, *Wylie v. Czapla*, 168 Neb. 646, 97 N.W.2d 255 (1959), *overruled on other grounds, Chlopek v. Schmall, supra.* See, also, NJI2d 4.20.

Subject to the provisions of Neb. Rev. Stat. § 25-804 (Reissue 1989), damages, like any other element of a plaintiff's cause of action, must be pled and proved, and the burden is on the plaintiff to offer evidence sufficient to prove plaintiff's alleged damages. *Nebraska Truck Serv. v. U.S. Fire Ins. Co.*, 213 Neb. 755, 331 N.W.2d 266 (1983).

Because Howells Elevator failed to present evidence that its under-truck conveyor could not be restored to its original

condition and also failed to present admissible evidence that the cost of repairing the conveyor would exceed the market value difference, it failed to present a prima facie case on the issue of damages.

For the foregoing reasons, the judgment of the district court is reversed and the cause remanded with the direction that it be dismissed.

REVERSED AND REMANDED WITH DIRECTION TO DISMISS.

GRANT, J., concurs.