EVERETT LEE STEWART, SR., AND LOIS STEWART, SPECIAL
ADMINISTRATORS OF THE ESTATE OF PAMELA JEAN STEWART,
DECEASED, APPELLEES, V. CITY OF OMAHA, A MUNICIPAL
CORPORATION, APPELLANT.

494 N.W.2d 130

Filed January 15, 1993.    No. S-90-298.

Herbert M. Fitle, Omaha City Attorney, James E. Fellows, and Jo A. Cavel for appellant.

Edward F. Fogarty, of Fogarty, Lund & Gross, and Thomas J. Tarsney for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

The City of Omaha (City) appeals a $356,932 judgment entered against it for the wrongful death of Pamela Jean Stewart, who was killed during a police pursuit of a motorcycle

and its driver when the motorcycle collided with another motor vehicle. Stewart was a passenger on the motorcycle. We affirm the judgment of the district court for Douglas County.

Since the suit was brought by Stewart's parents, as special administrators of her estate, under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1991), the case was tried to a district judge without a jury.

In a review of a bench trial under the Political Subdivisions Tort Claims Act, an appellate court must consider the evidence in the light most favorable to the successful party, resolving any conflicts in the evidence in favor of that party and giving to that party the benefit of all reasonable inferences that can be deduced from the evidence. *Mid Century Ins. Co. v. City of Omaha, ante* p. 126, 494 N.W.2d 320 (1992).

Considering the evidence in the light most favorable to her estate, the record reflects that Stewart was a passenger on a motorcycle operated by Jonathan William on the evening of August 20, 1987. Omaha police officer Brian Haskell, while in his marked police cruiser, spotted the motorcycle, recognizing it as one which he had attempted to stop 4 days earlier and which had successfully eluded him. The officer testified that he attempted to stop the motorcycle to identify both the vehicle and its driver. Haskell's check of the motorcycle's license plate number revealed that the motorcycle had not been reported stolen, although the license plates had expired. The plates were registered to a black Kawasaki. Haskell said that William's motorcycle appeared to be a red Suzuki or Honda, and thus he believed that the registration was for some other vehicle. In fact, the motorcycle driven by William was a black Kawasaki with a red gas tank.

Haskell testified that after receiving the registration information, he pulled behind the motorcycle, which had stopped in a parking lot. The officer testified that when he turned on his rotating emergency lights, William looked over his shoulder at the officer, had some conversation with Stewart, and then sped out of the parking lot. Haskell testified that at this point, he turned on his siren and initiated pursuit.

In a deposition admitted into evidence, William testified that he and Stewart had stopped in a parking lot and that he spoke

with his sister who was in her own car. William said that after he became aware of the officer's presence, he suggested to Stewart that she ride with his sister but that Stewart wanted to remain with William. After William and Stewart left the parking lot, William said Stewart "nudged" him to get his attention. William testified that his motorcycle had no mirrors and that when Stewart rode with him, she would routinely watch for traffic conditions from behind. William said that when Stewart nudged him, it was not to tell him to run from the officer, but to alert him to the rapidly approaching police car.

William testified that when he looked back, he saw the police car with its activated red lights. William accelerated the motorcycle, and the officer turned on his siren. William ran four stop signs during the approximately 2-minute chase. The record reflects that the motorcycle and the police cruiser reached speeds of 50 to 70 m.p.h. in a residential neighborhood having a speed limit of 25 m.p.h. William said that during the chase, there were times when he slowed to 15 to 20 m.p.h. William testified, "I believe [Stewart] was scared to get off the bike. I mean, I'd have been scared to get off the bike." William also said that he once came to an almost complete stop and told Stewart to get off the motorcycle. William testified that during this timeframe, which he acknowledged was momentary, Stewart made no response to his request before he resumed his flight. William testified that even if Stewart had said something as he resumed accelerating, he would not have been able to hear her comment over the noise of the motorcycle. At William's trial for felony motor vehicle homicide, he testified that there were three occasions when he stopped to let Stewart off the motorcycle.

Haskell testified that there were no people present on the lawns or sidewalks of the residential area through which the pursuit took place. He said that "[i]f there would have been pedestrians on the street, that would have made a difference" in his decision to pursue "[b]ecause, if there's children in the area playing, I'm not going to take the chance of one of them running out in front of me and having me run over them." Three other witnesses testified that there were children present in the area during the pursuit. One witness testified that there

were people on the lawns and sidewalks and that children were riding their bikes on the playground area adjacent to the crash site. The driver of the automobile involved in the accident reported that "there was people everywhere" in the area.

Haskell testified that he at no time believed that the hazards caused by his pursuit outweighed the need to apprehend the persons on the motorcycle and that while in pursuit, he felt that the motorcycle was probably stolen because "people don't usually run from traffic violations." The officer also testified that the motorcycle came to a complete stop at one point and that the officer stopped behind it, took off his seatbelt, and started to get out of his cruiser. He said that William "was doing something with the motorcycle," conversed with the passenger, and then took off again. The officer said that both William and Stewart had a clear opportunity to dismount from the motorcycle at that time. He said that during the pursuit, William and Stewart and bystanders were exposed to life-threatening risks. The officer testified that he felt that the motorcycle was stolen. The chase continued until the motorcycle ran a stop sign and collided with an automobile driven by another motorist. The driver of the automobile testified that Stewart was catapulted headfirst into a light pole. Stewart died as a result of her injuries.

In their first cause of action, Stewart's parents, as special administrators of her estate, alleged that the City was negligent by and through its police officer's actions because of the officer's unreasonable failure to abandon the pursuit once it became apparent that the seriousness of the offense, the density of population in the area of pursuit, and the risk of damage to Stewart and other innocent persons far outweighed the need for apprehension.

In the petition's second cause of action, it was alleged that the City was strictly liable to Stewart's estate by operation of § 13-911 in that Stewart was an innocent third party whose death was proximately caused by the vehicular pursuit by the Omaha police officer.

The City affirmatively alleged, in part, that (1) Stewart's injuries and death were proximately caused by her contributory negligence, (2) Stewart assumed the risk of her conduct, (3) an emergency situation was created by the attempt of William and

Stewart to flee from the police officer and that the police officer's actions were reasonable and lawful under such an emergency situation, and (4) Stewart was not an innocent third person within the meaning of § 13-911 but was a willing participant in an unlawful attempt to flee from a police officer and escape arrest. The district court found that the City was liable on both causes of action. The City's motion for a new trial was overruled.

In its appeal, the City claims that the trial court erred in finding that (1) Stewart was an innocent third party within the meaning of § 13-911, (2) Stewart neither assumed the risk nor was contributorily negligent in remaining a passenger on William's motorcycle, (3) Haskell's actions were negligent and a proximate concurring cause of Stewart's fatal injuries, and (4) the City was liable in damages.

Section 13-911 provides that

> [i]n case of death, injury, or property damage to any innocent third party proximately caused by the action of a law enforcement officer employed by a political subdivision during vehicular pursuit, damages shall be paid to such third party by the political subdivision employing the officer. This section shall be considered part of the Political Subdivisions Tort Claims Act and the provisions of sections 13-901 to 13-926 shall apply.

> For purposes of this section, vehicular pursuit shall mean an active attempt by a law enforcement officer operating a motor vehicle to apprehend one or more occupants of another motor vehicle, when the driver of the fleeing vehicle is or should be aware of such attempt and is resisting apprehension by maintaining or increasing his or her speed, ignoring the officer, or attempting to elude the officer while driving at speeds in excess of those reasonable and proper under the conditions.

This statute has created strict liability on the part of a political subdivision when (1) a claimant suffers death, injury, or property damage; (2) such death, injury, or property damage is proximately caused by the actions of a pursuing law enforcement officer employed by the political subdivision; and (3) the claimant is an innocent third party. The City argues that Stewart was not an "innocent third party" because "she was

responsible for the situation in which she found herself that day." Brief for appellant at 16. In a related argument, the City claims that Stewart was contributorily negligent and that she assumed the risk of her death when she "deliberately chose to remain a passenger" on the motorcycle. Brief for appellant at 43.

The City also claims that, beginning in the parking lot prior to the chase, Stewart had at least two opportunities to dismount from the motorcycle. Both William and Haskell testified that there was a conversation between William and Stewart in the parking lot. Although William's testimony indicates that he had been concerned that the police "were out to get me" and that he was concerned for Stewart, there is no evidence that he told Stewart that he intended to flee from Haskell. Instead, William merely suggested that Stewart ride with his sister.

Haskell also testified that William came to a complete stop at one point during the pursuit and that both parties had an opportunity to dismount at that time. However, at William's criminal trial, the officer testified that he "thought *maybe* [William] was going to pull over" at this point. The officer later testified at the criminal trial that he *never once saw William stop the motorcycle during the course of the pursuit.* A tape recording between Haskell and a police dispatcher during the chase does not contain any comment by Haskell that the motorcycle had stopped. The trial court found that the officer's "testimony in the criminal case was inconsistent with his testimony at this trial."

William also testified that at one point during the chase he "either slowed up or came to almost [a] complete stop," at which time he told Stewart to get off the motorcycle. However, he conceded that the amount of time Stewart had to dismount was "momentarily." William testified that the noise of the motorcycle was such that had Stewart objected to his again accelerating his motorcycle, he could not have heard her. The trial court found that Stewart "had no opportunity to dismount during this high-speed chase of two-minute duration. The roar of the motorcycle and the police siren prevented any communication between Pamela Jean Stewart and Jonathan William."

A district court's factual findings in a case brought under the Political Subdivisions Tort Claims Act will not be set aside unless such findings are clearly wrong. *Mid Century Ins. Co. v. City of Omaha, ante* p. 126, 494 N.W.2d 320 (1992). The court's findings that Stewart was an innocent third party who neither assumed the risk of her injuries nor was contributorily negligent are not clearly wrong. The City's first two assignments of error are without merit.

The court also found that "[t]he continued pursuit of a motorcycle with a passenger, at high speeds through a densely populated neighborhood, was negligent and a concurring proximate cause of the fatal injuries sustained by Pamela Jean Stewart." The evidence reflects that the Pursuit Driving Guidelines of the Omaha Police Division, in effect on August 20, 1987, stated that "[n]o pursuit shall be undertaken or continued when, in the judgment of the officer, the risk of injury outweighs the need for apprehension." The officer had been informed by radio that the motorcycle had not been reported stolen, but that the license had expired. The officer testified that there were no people present on the lawns or sidewalks of the residential area during the pursuit. Other witnesses testified that there were children present riding their bikes and that there were people "everywhere" in the area.

The question of proximate cause, in the face of conflicting evidence, is ordinarily one for the trier of fact, and the court's determination will not be set aside unless clearly wrong. See *Mid Century Ins. Co. v. City of Omaha, supra.* The court's findings of fact are not clearly wrong and will not be set aside. The City's third assignment of error is without merit.

The trial court was not clearly wrong in finding that (1) Stewart was an innocent third party within the meaning of § 13-911 who neither assumed the risk of her injuries nor was contributorily negligent and (2) Haskell was negligent in his pursuit of the motorcycle. Therefore, the City's fourth assignment of error is also without merit.

The City is liable to Stewart's estate under both causes of action. The judgment of the district court is affirmed.

AFFIRMED.