KENNETH GOODENOW, PERSONAL REPRESENTATIVE
OF THE ESTATE OF KEVIN GOODENOW, DECEASED, APPELLANT
AND CROSS-APPELLEE, V. STATE OF NEBRASKA DEPARTMENT OF
CORRECTIONAL SERVICES, APPELLEE AND CROSS-APPELLANT.

610 N.W. 2d 19

Filed May 5, 2000.    No. S-98-1024.

James C. Bocott and Blaine T. Gillett, of Ruff, Nisley & Lindemeier, for appellant.

Don Stenberg, Attorney General, and Marie C. Pawol for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The appellant, Kenneth Goodenow, the personal representative of the estate of Kevin Goodenow, filed an action pursuant to the State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 et seq. (Reissue 1987 & Cum. Supp. 1992), seeking damages related to Goodenow's death while he was incarcerated at the Lincoln

Correctional Center (LCC). The district court found in favor of the appellee, State of Nebraska, Department of Correctional Services (Department). We conclude that the findings of the district court were supported by the evidence and were not clearly erroneous. Accordingly, we affirm.

## BACKGROUND

Goodenow had been classified as a minimum security inmate but was placed at LCC, a medium-to-maximum security facility, in order to receive inpatient mental health treatment. Following his release from the mental health program, Goodenow was placed in the general population at LCC and was subsequently killed by two inmates. The personal representative alleged that the Department was negligent because it violated its own regulations when it failed to place Goodenow in a minimum security facility and failed to properly supervise the inmates. The personal representative also contended that the Department owed Goodenow a higher standard of care because he had a physical disability.

The Department alleged defenses of the discretionary function exception under § 81-8,219, contributory negligence, and assumption of the risk. The district court found no negligence on the part of the Department. The personal representative appeals, and the Department cross-appeals.

## FACTS

In April 1993, Goodenow was convicted of two counts of felony burglary and one count of felony theft. On April 29, 1993, he was received at the Department's intake center for a classification study. During this study, information was obtained regarding Goodenow's past criminal history and drug abuse. Information was also obtained showing that Goodenow had physical weakness in one arm and one leg and at times used a cane. Intellectual testing indicated that Goodenow was of average intelligence. His victim potential (personal risk factor) was rated to be low to moderate. The classifying officer further determined that Goodenow would benefit from inpatient mental health treatment due to a history of substance abuse, concerns about his disability and related depression, and his stated desire to work on those issues. Following the study, Goodenow was given a rated custody grade as a minimum security prisoner.

Although Goodenow was graded as a minimum security prisoner, the classifying officer made a recommendation to the unit administrator that the minimum security classification be overridden in order for Goodenow to receive inpatient mental health treatment at LCC. The Department's regulations require classification overrides to be approved by a review committee. The record indicates that such an approval was not obtained in Goodenow's case. A Department classification manual cites regulations and provides guidelines regarding how inmates are to be classified and how those classifications are utilized.

LCC generally housed inmates rated as medium or maximum security. However, some minimum security inmates were housed at LCC who had been terminated from the mental health program, or were authorized to work in outside assignments, or who had not been cleared to be transferred to another facility due to medical reasons. The inpatient mental health program at LCC was the only such program available to male inmates and was intended to be accessible to qualified inmates regardless of custody rating or initial custody score. Any mental health treatment provided was voluntary on Goodenow's part, and he could have declined such treatment. The record indicates that Goodenow did not need to be rated as a medium security prisoner in order to participate in the program. Inmates in the program were housed together and also had contact with other general population inmates who were not involved in the program.

The record reveals that while Goodenow was participating in the inpatient mental health program, he resisted treatment and was noncompliant with the program guidelines. He was never formally written up for assaultive behavior, but the record shows that other inmates complained that Goodenow was aggressive and had struck the legs of other inmates with his cane. Two weeks after Goodenow began the program, on August 20, 1993, the staff of the mental health unit determined that his participation in the program should be terminated.

Following his termination from the mental health program, Goodenow was placed in a general housing unit at LCC. At the time, the staff at LCC determined that Goodenow was not in need of protective custody, immediate transfer to a less secure facility, or other special placement. The classification system in

place at the time utilized classification reviews every 6 to 12 months. When Goodenow transferred out of the mental health program, a subsequent review was set for early December 1993.

After transferring into the general population at LCC, Goodenow was discovered, on one occasion, to be in possession of marijuana. At another time, sheets of paper were found on Goodenow that indicated he was indebted to other inmates. A prison staff member, Robert Ellinger, testified that he did not investigate these debts out of concern that Goodenow would be labeled as a snitch and thus be put in danger.

The record contains conflicting testimony regarding whether Ellinger was notified by another inmate that Goodenow was in danger. There was testimony that prison officials witnessed an altercation on October 12, 1993, involving Goodenow and three inmates, Stacey Fletcher, Jerry Simpson, and Gary Starks. The record reflects that Goodenow owed a "drug debt" to Fletcher and Simpson and that other inmates threatened Fletcher and Simpson in order to stop them from pressuring Goodenow to pay the debt. Starks testified that following the incident, he notified Ellinger that Goodenow was in danger and needed to be placed in protective custody for reasons he could not disclose. However, Ellinger denies that Starks made these statements to him.

On October 13, 1993, Fletcher and Simpson left their prison cell armed with a knife and an instrument similar to an ice pick and proceeded to Goodenow's cell. Fletcher was on room restriction at the time and was not supposed to leave except for meals, showering, and cleaning. The personal representative presented evidence of the route and distance that Fletcher and Simpson had to travel through the facility in order to reach Goodenow's cell. The Department presented evidence regarding the monitoring and observation of inmates at the facility, indicating that it was impossible to monitor every inmate at all times. Fletcher and Simpson stabbed Goodenow several times in his cell. Goodenow subsequently died as a result of the wounds.

The personal representative filed a tort claim on behalf of the estate, which was denied. The personal representative then filed suit in the district court pursuant to the State Tort Claims Act. The Department filed an answer alleging that the claim was barred under § 81-8,219 because claims involving inmate clas-

sification entailed a discretionary function of the Department. The Department also alleged defenses of contributory negligence and assumption of the risk.

Following a bench trial, the district court determined that the discretionary function exception under § 81-8,219, contributory negligence, and assumption of the risk did not apply. The district court ruled in favor of the Department on the basis that it was not negligent. In reaching this conclusion, the district court stated that although Goodenow was classified as a minimum custody inmate, his greatest rehabilitative need was for mental health treatment, and that Goodenow himself had expressed a willingness to participate in the mental health program. The district court further found that it was reasonable for Goodenow to be kept at LCC after his termination from the mental health program because of his intention to continue to use drugs and his disregard for rules in general. The district court found Stark's testimony to be unpersuasive and concluded that there was no evidence of negligent supervision. The personal representative appeals, contending that the district court erred in determining that the Department was not negligent. The Department cross-appeals, contending that the district court erred in determining that the discretionary function exception, contributory negligence, and assumption of the risk did not apply.

## ASSIGNMENTS OF ERROR

The personal representative assigns that the district court erred in determining that the Department (1) was not negligent when it classified Goodenow in violation of Department rules and regulations, (2) was not negligent in the supervision and monitoring of inmates, and (3) did not owe Goodenow a higher duty of care due to his disabilities.

On cross-appeal, the Department assigns that the district court erred in (1) failing to apply the discretionary function exception and (2) concluding that the defenses of contributory negligence and assumption of the risk did not apply.

## STANDARD OF REVIEW

A district court's findings of fact in a proceeding under the State Tort Claims Act, § 81-8,209 et seq., will not be set aside

unless such findings are clearly erroneous. *Sherrod v. State*, 251 Neb. 355, 557 N.W.2d 634 (1997).

## ANALYSIS

■ The personal representative contends that the district court erred in finding no negligence on the part of the Department. There is no dispute regarding the existence of a duty in the instant case. A jailer is bound to exercise, in the control and management of the jail, the degree of care required to provide reasonably adequate protection for his or her inmates. *Sherrod v. State, supra.* Thus, the question is whether the district court erred in determining that the Department did not breach its duty to protect Goodenow from harm. In this regard, the personal representative contends that the Department was negligent as a matter of law because it violated its own classification rules and regulations and there was evidence of negligent supervision.

■ In his brief, the personal representative states that he is not challenging the district court's findings of fact and is instead challenging the district court's conclusions of law. However, a violation of a statute or regulation ordinarily is not negligence per se, but is only evidence of negligence. *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992). See, also, *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993) (stating rule in relation to safety regulation). Thus, any violation of the Department regulations does not automatically entitle the personal representative to relief.

The district court in this case, as a finding of fact, determined that the Department acted reasonably in classifying and placing Goodenow at LCC and in keeping him there following his termination from the mental health program. Likewise, although evidence was presented to support the personal representative's theory of negligent supervision, the Department presented evidence to the contrary. The district court, as a finding of fact, found the evidence presented by the personal representative to be unpersuasive and found no negligence on the part of the Department under the facts. Under our standard of review, the district court's findings of fact will not be set aside unless such findings are clearly erroneous. *Sherrod v. State, supra.* Because there was evidence to support the findings of the district court,

we cannot conclude that those findings were clearly erroneous. Accordingly, the personal representative's first two assignments of error are without merit.

The personal representative next contends that the district court erred because it did not hold the Department to a higher standard of care based on Goodenow's physical disability. In support of his argument, the personal representative cites to cases involving a higher standard of care owed to children or intoxicated victims. See, e.g., *Daniels v. Andersen*, 195 Neb. 95, 237 N.W.2d 397 (1975). Those cases are not applicable to this case. A jailer is required to exercise a degree of care necessary to provide reasonably adequate protection for his or her inmates. *Sherrod v. State, supra; Daniels v. Andersen, supra.* The district court, in this case, found that the Department acted reasonably under the circumstances. We conclude that this finding was supported by the record and will not be disturbed on appeal. This assignment of error is also without merit.

## CONCLUSION

We conclude that the findings of the district court were not clearly erroneous. Thus, its conclusion that the Department was not negligent will not be set aside on appeal. Because we affirm on the basis of the district court's determination that the Department was not negligent, we do not address the issues raised in the Department's cross-appeal.

AFFIRMED.