ROGER J. ADAMS, AN INDIVIDUAL, AND ST. PAUL FIRE &
MARINE INSURANCE COMPANY, A CORPORATION, APPELLANTS,
v. STATE OF NEBRASKA, APPELLEE.
BETTY ADAMS, APPELLANT, v. STATE OF NEBRASKA, APPELLEE.
625 N.W. 2d 190

Filed April 26, 2001.   Nos. S-99-138, S-99-139.

P. Shawn McCann, of Sodoro, Daly & Sodoro, P.C., for appellants.

C. Thomas White, Jay L. Welch, and Douglas L. Kluender, of Welch, White & Wulff, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

This matter involves two consolidated suits brought by Roger J. Adams, St. Paul Fire & Marine Insurance Company (St. Paul), and Betty Adams (collectively the plaintiffs) against the State of Nebraska for damages and injuries arising out of an alleged vehicular pursuit by the Nebraska State Patrol. The State Claims Board denied the Adamses' claims. Two lawsuits were instituted, one on behalf of Roger and St. Paul, and the other on behalf of Betty. The trial court granted the State's motions for summary judgment. The Nebraska Court of Appeals reversed, and we granted the State's petition for further review.

## BACKGROUND

On May 23, 1997, Roger and his insurer, St. Paul, filed suit against the State under the State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 et seq. (Reissue 1994), for damages resulting from a

collision between Roger and James W. Kreizel. Betty, who witnessed the crash, filed a separate suit seeking damages for emotional distress, mental anguish, and loss of consortium.

The accident occurred on April 29, 1994, when Roger was driving his 1955 Ford Thunderbird eastbound on U.S. Highway 77 in Saunders County. Kreizel was driving westbound on Highway 77. Kreizel pulled out across the centerline to pass another westbound vehicle and crashed head on into Roger's car. Both Roger and Kreizel sustained extensive personal injuries and property damage as a result of the accident.

Moments before the crash, Kreizel passed Saunders County Deputy Sheriff Mitchell Bridges, who was traveling eastbound on Highway 77, and Nebraska State Trooper Todd Steckelberg, who was following about 100 yards behind Bridges. Bridges radioed Steckelberg and told him that Kreizel was traveling at a rate of speed greater than 80 m.p.h. The two of them turned their vehicles around to pursue Kreizel.

The evidence conflicts as to whether Steckelberg and Bridges had activated the emergency lights of their vehicles and began the pursuit prior to the collision between Roger's vehicle and Kreizel's vehicle. According to Bridges and Steckelberg, before they had completed the turn and before they could turn on the emergency lights of their vehicles, Kreizel crossed the centerline and crashed into Roger. Betty, however, who was following closely behind Roger, testified at her deposition that she saw a cruiser with its emergency lights turned on following about an eighth of a mile behind Kreizel's vehicle. After Betty saw the lights, she saw Kreizel come up behind a pickup towing a trailer in the westbound lane. She said Kreizel swerved across the centerline, apparently to pass the other truck, then swerved back behind the truck. Betty said Kreizel then swerved back across the centerline and crashed into Roger.

Betty testified that the crash sent Roger's car into a spin and that the car ultimately came to rest in the westbound lane. Kreizel's truck came to rest in the ditch on the south side of the road. After the crash, Betty immediately stopped her car near where the crash occurred. However, she said that when she got out of her car, a law enforcement officer was already there. A second officer arrived almost immediately thereafter.

As a result of the accident, Roger suffered extensive personal injuries requiring medical treatment. Both Roger and Betty settled with Kreizel for $45,000, the maximum amount under Kreizel's insurance policy. As part of this settlement, they signed a release, which provided in part as follows:

FOR THE SOLE CONSIDERATION OF Forty Five Thousand & 00 Dollars ($45,000.00), receipt of which I acknowledge, I fully and forever release and discharge James W. Kreizel their [sic] heirs, administrators, executors, successors and assigns, and all other persons and organizations who are or might be liable, from all claims for all damages which I sustained as the result of an accident which occurred on or about 4-29, 1994, at Or Near Wahoo Saunders County, Ne.

By executing this release, I intend and agree that this release applies to all of my claims arising from said accident, present and future, including, but not limited to, damage to or destruction of property; claims for known or unknown injuries, developments, consequences and permanency of those injuries; and there is no misunderstanding in this regard.

This release was on a preprinted form with blanks provided in which the Adamses wrote the amount, the person released, the date, and the location of the accident. The record also shows that Roger and Betty collected $105,000 from St. Paul: $5,000 under their medical payments coverage and $100,000 under their underinsured motorist coverage.

Roger and St. Paul filed a tort claim with the State Claims Board on April 25, 1996. Betty filed a separate claim on the same date. Both claims were denied. Roger and St. Paul filed suit in the district court, and Betty filed another suit in the same court. The State filed consolidated motions for summary judgment, and the motions for summary judgment were sustained. The plaintiffs then filed two separate appeals, which have been consolidated.

The Court of Appeals reversed the trial court's granting of the summary judgment in favor of the State. The Court of Appeals determined that there existed a genuine issue of material fact regarding whether a vehicular pursuit had taken place as defined

in § 81-8,215.01 and whether the accident occurred as a result of this pursuit. The Court of Appeals held that the State and Kreizel may be joint tort-feasors, so that a release of Kreizel does not necessarily release the State, and further held that the Adamses did not intend to release the State from liability when they released Kreizel. See *Adams v. State*, Nos. A-99-138, A-99-139, 2000 WL 1218431 (Neb. App. Aug. 29, 2000) (not designated for permanent publication).

## ISSUES ON APPEAL

The State, in its petition for further review, frames three issues: (1) whether the Court of Appeals erred in holding that under § 81-8,215.01, state law enforcement officers and fleeing criminals are joint tort-feasors; (2) whether the Court of Appeals erred in holding that a material question of fact existed about whether a vehicular pursuit occurred; and (3) whether the Court of Appeals erred in implicitly holding that law enforcement vehicles are underinsured motorists against whom a settling underinsured motorist insurer may have a right of subrogation.

## STANDARD OF REVIEW

■■■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Casey v. Levine, ante* p. 1, 621 N.W.2d 482 (2001). Summary judgment is proper where the facts are uncontroverted and the moving party is entitled to judgment as a matter of law. *Prochaska v. Douglas Cty.*, 260 Neb. 642, 619 N.W.2d 437 (2000).

## ANALYSIS

### State as Joint Tort-feasor

The first error the State assigns in its petition for further review is that the Court of Appeals erred in holding that under § 81-8,215.01, state law enforcement officers and fleeing criminals are joint tort-feasors.

The question before the Court of Appeals was not whether the State may be a joint tort-feasor, because that question had not been raised before the trial court in the motions for summary

judgment. Rather, the question before the Court of Appeals was whether the release the Adamses gave to Kreizel also released the State. In order to decide the release question, the Court of Appeals was required to decide whether the State's potential liability in this case was primary or secondary. If the State's potential liability was secondary and derived from Kreizel's liability, then the State would have been released when Kreizel was released. See *Brown v. American Tel. & Tel. Co.*, 252 Neb. 95, 560 N.W.2d 482 (1997). If, on the other hand, the State's liability were primary, then the release of Kreizel would not necessarily have released the State unless the language of the release also described the State. See *id.*

In deciding this question, the Court of Appeals stated: "We agree with the plaintiffs . . . that the State may be jointly and not secondarily liable." *Adams v. State*, 2000 WL 1218431 at *5. The State claims that by asserting that the State may be jointly liable, the Court of Appeals erroneously injected negligence principles into a strict liability statute.

It is apparent that in the context of its opinion, the Court of Appeals was not deciding the question of joint liability. Rather, it was deciding the question of whether the State's potential liability was primary or secondary. However, to the extent that the Court of Appeals addressed the issue of joint liability, it was in error. On the other hand, to the extent that it determined that the State's liability is not secondary but primary, it was correct.

The plaintiffs sued on theories of negligence as well as statutory strict liability under § 81-8,215.01. If the State were found negligent, it would be primarily liable in tort for the damages its agents proximately caused.

■ If, on the other hand, the State were found liable under § 81-8,215.01, its liability would still be primary. Section § 81-8,215.01, as it existed prior to the amendments in 1996, provided:

> In case of death, injury, or property damage to any innocent third party proximately caused by the action of a law enforcement officer employed by the state during vehicular pursuit, damages shall be paid to such third party by the state.

For purposes of this section, vehicular pursuit shall mean an active attempt by a law enforcement officer operating a motor vehicle to apprehend one or more occupants of another motor vehicle when the driver of the fleeing vehicle is or should be aware of such attempt and is resisting apprehension by maintaining or increasing his or her speed, ignoring the officer, or attempting to elude the officer while driving at speeds in excess of those reasonable and proper under the conditions.

■ Statutory language is to be given its plain and ordinary meaning absent anything to the contrary; thus, an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Ameritas Life Ins. v. Balka*, 257 Neb. 878, 601 N.W.2d 508 (1999).

■ While the State argues that under § 81-8,215.01, its liability derives from the pursuee's liability, a reading of the plain language of the statute shows that the focus of the inquiry in determining whether the State is liable is the officer's actions. If the officer's actions during a vehicular pursuit proximately cause damage to an innocent third party, the State is strictly liable for those damages. § 81-8,215.01. The statute does indeed eliminate the need to assess an officer's culpability, but his conduct must still be examined to determine whether such conduct proximately caused the plaintiff's injuries. Thus, we reject the State's argument that the officer's conduct is not to be examined in determining whether the State is liable under § 81-8,215.01.

■ The pursuee's conduct comes into play only in determining whether a vehicular pursuit occurred. The language of the statute makes the pursuee's conduct merely a factual circumstance that must be proved in order to establish that a vehicular pursuit occurred. It is not a part of the proximate cause analysis. Thus, the statute does not create on the part of the State a secondary liability derived from the pursuee's liability during a vehicular pursuit; rather, it creates a primary liability based on the actions of officers the State employs. Because the State has primary liability, its liability is not dependent on Kreizel's liability. We therefore conclude that the Court of Appeals correctly determined that the State's liability was not secondary and that it was not released merely because Kreizel was released.

VEHICULAR PURSUIT

The State, in its briefs, argues that there is no genuine issue of material fact as to whether a vehicular pursuit occurred. In particular, the State first argues that the only possible inference from Kreizel's testimony is that he had no knowledge of any pursuit and that without knowledge of a pursuit, there can be no vehicular pursuit as defined in § 81-8,215.01. Under § 81-8,215.01, vehicular pursuit means

> an active attempt by a law enforcement officer operating a motor vehicle to apprehend one or more occupants of another motor vehicle when the driver of the fleeing vehicle is or should be aware of such attempt and is resisting apprehension by maintaining or increasing his or her speed, ignoring the officer, or attempting to elude the officer while driving at speeds in excess of those reasonable and proper under the conditions.

While the State maintains that Kreizel did not know he was being pursued, Kreizel's testimony reflects uncertainty. While he said he did not see any emergency lights or hear any sirens before the accident, he admitted that he could not remember much about the accident. In particular, he did not recall whether he was intoxicated or had anything to drink that night. He did not recall at what time the accident happened. He did not remember seeing any police cruisers before the crash. He did not remember whether he was speeding or not at the time of the accident. He did not recall any of the details of the accident except looking around the truck and trailer in front of him and seeing headlights. He did not remember one way or the other whether anyone was trying to pull him over. He did not remember crossing the centerline and trying to pass the truck, and he did not recall applying his brakes at any time.

Based on these facts, the plaintiffs argue that the credibility of Kreizel's testimony is doubtful. In any event, the plaintiffs argue that Kreizel's credibility is a fact question for the trier of fact and should not be decided on summary judgment. We agree and conclude that there exists a question of fact regarding whether Kreizel had knowledge of a police pursuit.

The State further argues that the officers had not begun a vehicular pursuit, as defined under § 81-8,215.01, because they

had not activated the emergency lights or sirens of their vehicles before the accident occurred. Steckelberg and Bridges both stated in their respective affidavits that they had not finished turning their vehicles around and had not activated the lights or sirens before Kreizel crashed into Roger. Their testimony, however, was not uncontradicted. Betty testified that she observed flashing police lights *before* the crash occurred and that the flashing lights appeared to be a short distance behind Kreizel's vehicle. Betty also testified that the state trooper at the scene came to Roger's hospital room and admitted that he and the other officer had been chasing Kreizel because Kreizel was speeding and driving erratically.

In its brief, the State claims that Betty's testimony that she saw the lights at the same time she observed the collision is "physically and mathematically impossible and incredible." Brief for appellee at 5. As stated above, Betty did not actually say she saw the lights at the same time as the collision; she said she saw the lights before the collision. In addition, the State does not demonstrate with words or equations why Betty's testimony is physically and mathematically impossible and incredible. Indeed, it is far from clear how her testimony could be impossible, and the extent to which it is incredible is a question for the trier of fact.

The plaintiffs also point to the "Investigator's Motor Vehicle Accident Report," signed by Steckelberg, as evidence that a pursuit had begun. The report states in part:

> Vehicle #2 [Kreizel's vehicle] was clocked at 83mph on radar by this Officer. When attempting to catch up with this vehicle, I observed #2 attempt to pass a truck pulling a horse trailer. I could clearly see oncoming traffic, as #2 attempted to go over to the South shoulder striking vehicle #1 [Roger's vehicle] who was Eastbound, head on.

The State maintains that no reasonable inference can be made from the motor vehicle accident report that a pursuit was taking place. Contrary to the State's argument, the report is in fact susceptible to two interpretations. On the one hand, it could be read as expressing the fact that Steckelberg indeed did try to chase and catch up to Kreizel's vehicle. Under this interpretation, Steckelberg would have completed turning his vehicle and

would have been chasing behind Kreizel at the time when Kreizel crossed into the opposite lane. This interpretation would be consistent with Betty's testimony that she saw police lights a short distance behind Kreizel's vehicle. On the other hand, it could be inferred that Steckelberg's turning of his vehicle, to which he testified in his affidavit, was part of his attempt to catch up with Kreizel's vehicle. Under this interpretation, Steckelberg would have begun turning his cruiser, and in the process of doing so, would have seen Kreizel's vehicle pull into oncoming traffic and hit Roger's vehicle. Under our standard of review, we must resolve all reasonable inferences in favor of the nonmoving party. Thus, we must accept the inference that favors the plaintiffs.

It is clear from the foregoing discussion that the evidence conflicts as to whether or not a pursuit had begun at the time of the accident. Moreover, the State admitted at oral argument that there may be a question of fact as to whether a pursuit occurred. Thus, to the extent the trial court's grant of summary judgment was based on this ground, it was in error. The Court of Appeals correctly determined that an issue of fact existed.

### SUBROGATION

The State next argues that government vehicles are not under-insured vehicles under Neb. Rev. Stat. § 60-575 (Reissue 1993) (now codified at Neb. Rev. Stat. § 44-6407(4) (Reissue 1998)) of the Underinsured Motorist Insurance Coverage Act, and because they are not, an underinsured motorist insurer does not have a right of subrogation against the State as it otherwise would against an underinsured motorist.

■ A review of the State's motion for summary judgment reveals that this issue was not raised for the trial court's determination. An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *In re Estate of Jakopovic, ante* p. 248, 622 N.W.2d 651 (2001). We therefore decline to consider the subrogation issue on appeal.

### CONCLUSION

We therefore conclude that the Court of Appeals erred to the extent that it addressed the issue of joint liability. However, the

Court of Appeals correctly determined that the State's liability, if it exists, is primary, not secondary, and that a question of fact exists as to whether or not a vehicular pursuit occurred. As such, the Court of Appeals correctly concluded that the trial court erred in granting the State's motion for summary judgment.

AFFIRMED.