RONALD D. MEYER, SPECIAL ADMINISTRATOR OF THE ESTATE OF RAMONA C. MEYER, DECEASED, APPELLANT, V. STATE OF NEBRASKA, APPELLEE.

650 N.W.2d 459

Filed August 9, 2002. No. S-01-303.

Denise E. Frost and Clarence E. Mock, of Johnson & Mock, for appellant.

Douglas L. Kluender and Jay L. Welch, of Locher, Cellilli, Pavelka & Dostal, L.L.C., for appellee.

Hendry, C.J., Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Per Curiam.

## NATURE OF CASE

Ramona C. Meyer (Meyer) was killed as a result of a three-vehicle accident. At the time, Donald C. Poston (Poston), the driver of the van which struck Meyer's car, was being pursued by a Nebraska State Patrol trooper. Meyer's husband, as special administrator of her estate, filed this action against the State of Nebraska. The district court for Cuming County entered judgment for the State, and the estate appeals.

## STANDARD OF REVIEW

■ A district court's findings of fact in a proceeding under the State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 et seq. (Reissue 1996 & Cum. Supp. 2000), will not be set aside unless such findings are clearly erroneous. *Goodenow v. State*, 259 Neb. 375, 610 N.W.2d 19 (2000).

■ The question of proximate cause, in the face of conflicting evidence, is ordinarily one for the trier of fact, and the court's determination will not be set aside unless clearly wrong. *Stewart v. City of Omaha*, 242 Neb. 240, 494 N.W.2d 130 (1993), *disapproved in part on other grounds, Henery v. City of Omaha*, 263 Neb. 700, 641 N.W.2d 644 (2002).

## FACTS

On August 5, 1995, Poston, his wife Julie, and his sister-in-law drove from Springfield, Nebraska, to Norfolk, Nebraska, to visit the Postons' daughter, who was a patient at the Norfolk Regional Center. As a pretense, Julie suggested that Poston take their daughter to pick up supplies while Julie remained at the center. Julie actually wanted to discuss with staff of the center a recent deterioration in Poston's behavior.

Poston was to return to the center to pick up Julie, and the family planned to see a movie.

Poston left the center with his daughter and sister-in-law as passengers in his van. Rather than driving to pick up supplies, he left Norfolk on U.S. Highway 275, heading toward Springfield. Traveling east at a high rate of speed, he met a westbound patrol car driven by Sgt. Gerald Sieck of the Nebraska State Patrol. Using radar, Sieck determined that Poston was traveling at 94 miles per hour. Sieck turned his car around and, with his car's siren and overhead lights activated, pursued Poston approximately 27 miles through Wisner and Beemer and into West Point.

Poston slowed as he passed through Wisner, but outside town, he increased his speed to more than 100 miles per hour. On two occasions, Sieck was able to get close enough to the van to read its license plate.

At Sieck's request, Sgt. Lonnie Schultz of the West Point Police Department set up a roadblock on the north side of the town. Poston passed through the roadblock and then accelerated, continuing into West Point at a speed estimated at between 70 and more than 100 miles per hour. At the intersection of Highway 275 and Grant Street, Poston's van collided with two vehicles.

One of the cars was driven by Meyer, who was killed. Her estate filed a wrongful death action and sought damages for pain and suffering and medical and funeral expenses. The other car was driven by Muriel A. Bacus, who was injured along with her sons. It is undisputed that Meyer was killed during a vehicular pursuit involving a law enforcement officer employed by the State.

The district court found that on the day of the accident, Poston was suffering a psychotic episode which continued after the collision and that Poston was undeterred in his obsession to return home to Springfield at a high rate of speed. The court found that although Sieck's actions "were obviously a factor," the evidence did not show that Poston would have driven other than as he did in the absence of a pursuit. The court concluded that the pursuit was not a concurring proximate cause of the accident, and it dismissed the estate's claim against the State. Additional facts will be set forth in the analysis as necessary.

## ASSIGNMENTS OF ERROR

The estate asserts that the district court erred in its interpretation and application of the proximate cause element of § 81-8,215.01 (Reissue 1994) (which was in effect at the time of the accident) and in finding that the estate failed to prove that the pursuit proximately caused the accident, thus incorrectly dismissing the estate's claim against the State. The estate also asserts that the court abused its discretion in admitting and adopting the opinion of a physician about the state of mind and actions of Poston, including whether his van would have collided with the Meyer and Bacus vehicles absent the pursuit by Sieck.

## ANALYSIS

The district court's findings of fact in a proceeding under the State Tort Claims Act will not be set aside unless such findings are clearly erroneous. *Goodenow v. State*, 259 Neb. 375, 610 N.W.2d 19 (2000). The question presented is whether Sieck's pursuit of Poston was a proximate cause of Meyer's death. The question of proximate cause, in the face of conflicting evidence, is ordinarily one for the trier of fact, and the court's determination will not be set aside unless clearly wrong. *Stewart v. City of Omaha*, 242 Neb. 240, 494 N.W.2d 130 (1993).

At the time of the accident, § 81-8,215.01 provided:

> In case of death, injury, or property damage to any innocent third party proximately caused by the action of a law enforcement officer employed by the state during vehicular pursuit, damages shall be paid to such third party by the state.
>
> For purposes of this section, vehicular pursuit shall mean an active attempt by a law enforcement officer operating a motor vehicle to apprehend one or more occupants of another motor vehicle when the driver of the fleeing vehicle is or should be aware of such attempt and is resisting apprehension by maintaining or increasing his or her speed, ignoring the officer, or attempting to elude the officer while driving at speeds in excess of those reasonable and proper under the conditions.

In *Adams v. State*, 261 Neb. 680, 625 N.W.2d 190 (2001), we stated that the conduct of the officer must be examined to

determine whether such conduct proximately caused the plaintiff's injuries. If an officer's actions during a vehicular pursuit proximately cause damage to an innocent third party, the State is strictly liable for those damages. *Id.*

In *Stewart*, we construed Neb. Rev. Stat. § 13-911 (Reissue 1991), which addressed vehicular pursuits conducted by officers of political subdivisions. We held that § 13-911

> created strict liability on the part of a political subdivision when (1) a claimant suffers death, injury, or property damage; (2) such death, injury, or property damage is proximately caused by the actions of a pursuing law enforcement officer employed by the political subdivision; and (3) the claimant is an innocent third party.

*Stewart*, 242 Neb. at 244, 494 N.W.2d at 133.

The district court found that Poston was suffering from a psychotic episode during his travel from Norfolk to West Point and that this psychotic state continued after the collision. The court concluded that as a result of his psychotic state, Poston was undeterred in his obsession to return home at a high rate of speed. The court found that Poston was aware that Sieck was pursuing him, but it concluded that the evidence did not show that the accident was caused by Sieck's actions. It concluded that Sieck's actions were not a concurring proximate cause because Poston's high-speed driving had taken place for several miles prior to the time Sieck observed Poston. The court found that the estate failed to establish that the pursuit by Sieck was a proximate cause of the accident, and it dismissed the action.

The estate argues that the district court erroneously interpreted the proximate cause element of § 81-8,215.01 to require that the vehicular pursuit be the sole proximate cause of the accident, rather than merely a proximate cause of the accident. It relies upon the court's finding that while Sieck's actions "were obviously a factor," they were not the proximate cause of the accident.

■ We therefore consider whether the language of § 81-8,215.01 requires that the vehicular pursuit be the sole proximate cause. Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision

made by the court below. *Douglas Cty. Bd. of Comrs. v. Civil Serv. Comm.*, 263 Neb. 544, 641 N.W.2d 55 (2002).

■ We conclude that the plain language of § 81-8,215.01 requires that the actions of a law enforcement officer during a vehicular pursuit be merely a proximate cause of the damage, and not the sole proximate cause. A proximate cause is a cause (1) that produces a result in a natural and continuous sequence and (2) without which the result would not have occurred. *Brandon v. County of Richardson*, 261 Neb. 636, 624 N.W.2d 604 (2001).

■ In *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 510 N.W.2d 41 (1994), we approved a jury instruction stating that a proximate cause need not be the immediate cause of an injury; it may be enough that the acts complained of set in motion a series of events through which damage results. See, also, *Rose v. Buffalo Air Service*, 170 Neb. 806, 104 N.W.2d 431 (1960). A cause of an injury may be a proximate cause, notwithstanding that it acted through successive instruments of a series of events, if the instruments or events were combined in one continuous chain through which the force of the cause operated to produce the disaster. *Woollen v. State*, 256 Neb. 865, 593 N.W.2d 729 (1999).

■ We therefore must address whether the district court was clearly wrong in finding that the pursuit was not a proximate cause of the accident. In reviewing the findings of the trial court, an appellate court presumes that the court resolved any controverted facts in favor of the successful party and considers the evidence and permissible inferences therefrom most favorably to that party. *Vilas v. Steavenson*, 242 Neb. 801, 496 N.W.2d 543 (1993).

The following evidence is significant in our determination. Poston was driving his van at a high rate of speed, which was clocked at 94 miles per hour. Sieck gave chase and turned on his car's siren and overhead lights. The siren and lights remained in operation through Wisner, Beemer, and West Point, a distance of approximately 27 miles. During the pursuit, Poston's van passed any vehicle it approached, and vehicles pulled over for Sieck.

Poston slowed to approximately 70 miles per hour as he passed through Wisner and then sped up. Sieck increased his speed to more than 100 miles per hour to catch up to Poston. On two occasions between Wisner and Beemer, Sieck closed to

within 100 feet of the van. With Sieck close behind, Poston went through Beemer in excess of 100 miles per hour. Sieck then radioed the Cuming County Sheriff and requested a roadblock north of West Point. In the 8 miles between Beemer and West Point, Sieck clocked Poston at 107.3 miles per hour.

According to Sieck's testimony, he believed during the pursuit that Poston was resisting apprehension by attempting to elude him. Sieck noted, however, that Poston did not try to turn off onto a county road to lose him, a common action taken by those who are evading police. Sieck said there was a time during the pursuit when he perceived that no matter what he did, including terminating the pursuit, Poston would continue to flee.

Sieck requested that the roadblock be set up at the junction of Highways 275 and 9, which is about 1 mile from the West Point city limits. The roadblock was set up in one lane by Sergeant Schultz of the West Point Police Department.

Schultz said he was notified by the county sheriff's office dispatch that Sieck was involved in a pursuit from the north into West Point. The one-lane roadblock allowed an escape path and followed department policy. Southbound traffic was directed onto the shoulder of the road. After Schultz parked his patrol car, he turned on the emergency lights and took a shotgun with him in case the speeding vehicle headed toward him.

When Schultz first saw the van, Sieck's vehicle was approximately one-eighth to one-half mile behind it. Schultz stated that Poston was obviously aware of the roadblock because the van went around three vehicles on the shoulder, cut sharply between the patrol car and another car, cut back within a few feet in front of the patrol car, and continued southbound. Schultz could hear the van accelerate as it continued into West Point. As Sieck approached the roadblock, he slowed down. He then accelerated after passing through the roadblock and continued the pursuit.

Sieck followed Poston into West Point at a distance described variously as one-half mile, several blocks, or just a few seconds. Within the city limits of West Point, Highway 275 is known as Lincoln Street, which extends a distance of 1.8 miles. Sieck was at the top of a hill about .63 of a mile from the intersection of Lincoln and Grant Streets when the accident occurred.

The Meyer vehicle was facing east on Grant Street and was apparently preparing to turn north onto Highway 275. Poston passed another vehicle about two blocks before the intersection with Grant Street. The Poston and Meyer vehicles collided head on, and Poston's van then crossed the centerline and collided head on with the Bacus station wagon, which was northbound on Highway 275.

Gaylon Kuchel, who teaches courses in law enforcement pursuit and helped design the pursuit policy for the Omaha Police Department, stated that the Nebraska State Patrol pursuit policy met the criteria established in the curricula of law enforcement academies, the Nebraska State Crime Commission, and state law, which requires law enforcement agencies to adopt vehicular pursuit policies. Police officers are taught that the continuation of a high-speed pursuit over a protracted distance very frequently results in an accident. Kuchel said that roadblocks are not used often because they are dangerous and that after a fleeing suspect has passed a roadblock, there can be an "excitation about that situation" and the vehicle increases its speed as it leaves the roadblock.

On August 7, 1995, Poston was interviewed by Investigator David Spiegel. Poston said he remembered meeting Sieck outside Norfolk. Poston said he knew if he stopped, he would be killed. Poston stated that the "voice" told him to "go, go, go" and that he would be protected. Poston told Spiegel that he saw the red lights and heard the siren behind him. He recognized the roadblock at West Point and went around it.

Dr. Terry Davis, a psychiatrist practicing in Omaha, testified that Poston's behavior was consistent with a psychotic episode. Psychosis impairs one's ability to interpret reality. Davis said that Poston did not appear to understand the consequences of his actions. Davis stated that a person in a psychotic state may perceive voices when no one is present. Davis stated that Poston believed a "voice" directed him to leave Norfolk.

Dr. William Spaulding, a clinical psychologist who treated Poston at the Lincoln Regional Center, said Poston had a chronic psychiatric disorder punctuated by periods of acute psychosis, which were characterized by confusion, emotional arousal, delusional beliefs, and a propensity to act on those

beliefs. On the date of the accident, Poston was suffering from a severe psychiatric disorder-either schizophrenia or schizoaffective disorder, Spaulding said. Poston's behavior was driven by his delusional beliefs and extreme emotional arousal, and he was not able to understand the basic concepts of right and wrong on that day.

Spaulding said he saw no reason why Poston would have changed his behavior if the patrol vehicle had not been following him. Spaulding said it is highly unlikely that any action by Sieck would have disrupted the general nature of Poston's behavior that day. "He was on a psychotic mission, and whatever events may have transpired I very much doubt that it would have diverted him from his psychotic mission."

All the injured were taken to the hospital in West Point, where Douglas Kelley, a Nebraska State Patrol officer, said he heard Poston tell his daughter: " 'I knew we had to outrun that police officer because he was going to kill us.' " She responded, " 'No, Dad, we were stupid,' " and Poston stated, " 'No, we weren't. If I hadn't wrecked we'd be dead.' "

In its written opinion, the district court stated:

Although the Trooper's actions were obviously a factor, the evidence does not show that in the absence of a pursuit Poston would have driven other than as he did. . . .

. . . [T]he evidence shows that Poston left Norfolk and drove at a high rate of speed to the point of the accident [which] was as likely caused by the "voice" in his head directing him to drive fast as by Trooper Sieck's pursuit.

This Court cannot find that Trooper Sieck's actions were a concurring proximate cause for the reason that Poston's high speed driving had been taking place for several miles prior to Sieck's observations. Although the chase may have been a factor, the evidence does not show that his pursuit combined with Poston's psychotic behavior to cause the accident.

The definition of vehicular pursuit is especially relevant to our decision.

[V]ehicular pursuit shall mean an active attempt by a law enforcement officer operating a motor vehicle to apprehend one or more occupants of another motor vehicle when the

driver of the fleeing vehicle is or should be aware of such attempt and is resisting apprehension by maintaining or increasing his or her speed, ignoring the officer, or attempting to elude the officer while driving at speeds in excess of those reasonable and proper under the conditions.

§ 81-8,215.01.

The accident occurred when Poston's vehicle arrived at the intersection of Highway 275 and Grant Street in West Point at the same time the Meyer and Bacus vehicles arrived. For the pursuit to have been a proximate cause of the accident, the pursuit must have caused Poston to resist apprehension by maintaining or increasing his speed or must have caused Poston to attempt to elude Sieck while driving at speeds in excess of those reasonable under the conditions. If the actions of law enforcement caused Poston to increase his speed or attempt to elude Sieck by driving at an excessive speed, then those actions can be found to have been a proximate cause of the accident.

The district court found that the pursuit was not a proximate cause because Poston would have taken the same actions regardless of any action by law enforcement personnel who were in pursuit of Poston. We disagree and conclude that the court was clearly wrong.

A cause of injury may be a proximate cause, notwithstanding that it acted through a series of events, if the events were combined in one continuous chain to produce the accident. See *Woollen v. State*, 256 Neb. 865, 593 N.W.2d 729 (1999). The test of causation is not that the particular injury could be anticipated but whether after the occurrence, the injury appears to be the reasonable and probable consequence of the acts or omissions. *Id.*

Whether Poston could have been diverted from his psychotic mission and whether the pursuit had anything to do with how Poston drove the van while on his mission are two separate issues. If the pursuit caused Poston to drive the van in an attempt to elude apprehension, then the pursuit is a proximate cause of the accident.

Poston was aware that he was being pursued by law enforcement. When he was first observed by Sieck, he was traveling at 94 miles per hour. The pursuit lasted for 27 miles, during

which time Poston's speed varied from 70 to 107 miles per hour. At several times, Poston increased his speed during the pursuit.

Because of Poston's psychotic condition, the district court discredited what he said about the pursuit, but it is not disputed that Poston knew he was being pursued and that some of his actions while driving were for the purpose of eluding his pursuer. He swerved around the roadblock and accelerated after passing the roadblock. Immediately following the accident, Poston stated, " 'I knew we had to outrun that police officer because he was going to kill us.' " Poston's reasons for evading the pursuer, whether real or imagined, are not relevant to our determination. What is important is the fact that at certain times, Poston's actions were a result of his attempts to evade his pursuer.

It was not disputed that Poston was trying to resist apprehension. Sieck stated that Poston was attempting to elude him. Schultz stated that Poston was obviously aware of the roadblock and that the van accelerated as it passed the roadblock. After passing the roadblock, Poston accelerated and continued into West Point. Sieck continued to pursue Poston through the roadblock and into West Point.

The roadblock was a factor in the pursuit. It was initiated at the specific request of Sieck in an attempt to apprehend Poston. Poston attempted to elude law enforcement when he encountered the roadblock. As Poston approached the roadblock, he altered his speed, swerved to avoid the cars, and then accelerated. Poston's actions were the result of Sieck's attempt to apprehend Poston. The pursuit and the roadblock were factors contributing to Poston's arrival at the intersection of Highway 275 and Grant Street at a time which resulted in the accident.

Section 81-8,215.01 creates strict liability on the part of the State when a claimant suffers death or injury which is proximately caused by the actions of a pursuing law enforcement officer and the claimant is an innocent third party. See *Stewart v. City of Omaha*, 242 Neb. 240, 494 N.W.2d 130 (1993). Meyer was an innocent third party who died as a result of the accident. The pursuit of Poston, which included the use of a roadblock, was, at a minimum, a proximate cause of the accident. Sieck's

actions set in motion a series of events through which the accident occurred. These events were combined in one continuous chain which ultimately resulted in the accident.

The question of proximate cause, in the face of conflicting evidence, is ordinarily one for the trier of fact, and the court's determination will not be set aside unless clearly wrong. *Stewart v. City of Omaha, supra.* We find that the district court was clearly wrong in determining that the pursuit was not a proximate cause of the accident.

The estate also objects to the district court's admission and adoption of Davis' opinion that the pursuit was an extraneous factor that did not affect Poston's actions. Because we find that the court erred in entering judgment for the State, the cause must be remanded for a determination of damages only. Davis' opinion relates to the issue of liability, and it is therefore unnecessary to address this assignment of error.

## CONCLUSION

The district court was clearly wrong in finding that the pursuit was not a proximate cause of the accident which resulted in Meyer's death. Therefore, the judgment is reversed, and the cause is remanded for a new trial on the issue of damages.

REVERSED AND REMANDED FOR A NEW TRIAL
ON THE ISSUE OF DAMAGES.

WRIGHT, J., participating on briefs.